Morning's docket is the case of Amy L. Foss, N.K.A. Amy Hartman v. Geoffrey T. Foss. And we have Mr. Steiger for the appellant and Mr. Bentonville Leo for the appellate. Thank you, Justice Chappell. Counsel, please report. I don't know if this was planning, but this appears to be the indirect civil contempt docket this morning. We use it in my area of domestic relations. We use it a lot because it's a great remedy to keep people in line. We have to do a lot of trying to keep people in line. And we cite early in our case, or early in our brief, Marriage of Samuel, which is a very interesting case to look at. And it really talks about, not in terms of binding precedent, but it talks about the fact that the various forms of contempt are extraordinarily nuanced and complicated and that they frequently arise in circumstances of high emotion. And I think that is true, as we just heard in the last case, not only in the high emotion of the litigants, but sometimes in the way it comes across in court and a judge's reaction to some of the things that are related. And I think in our case, this one, we have a similar instance where a judge overreacted to some of the things that were heard and entered some remedies that were clearly beyond the scope of her discretion and completely ignored what evidence was or was not presented. We have two fairly simple issues in ours. The first is whether or not there was evidence of contempt. This one involved visitation issues with two children. And it unfortunately went on over many years. There were years that there was no visitation. There were issues of visitation back and forth. We were in front of Judge Duff three or four times. But what's relevant to this particular aspect of it, Judge Duff entered an interim order on June 26th of 2009. And that spelled out that this is what she was trying to get the people back on track. There had been a substantial gap in visitation. She's trying to get it started again. So I represent Mom. Mom had custody. She set up a visitation for Dad of a couple of hours, two nights a week, and four hours on either a Saturday or a Sunday. And the whole question that I raised in the first part is, was there any evidence that Mom violated that? For indirect civil contempt, we have to have a specific order. We have to have willful disobedience of that order. And obviously, if it's indirect, it occurs outside the presence of the court. We have a specific order. We have her order of June 26th. And the presentation of evidence on behalf of Mr. Foss was, I would say, pretty lackadaisical. We started out hearing about something that had happened in March, a couple months prior to the order. I objected to that. We went back and forth a little bit, and Judge Duff said, yes, you're right. We need to look at things that occurred after June 26th. After that, there is no specific evidence. The only thing that's talked about that you'll see in the transcript is what happened on Father's Day. And there were some fairly general statements made by Mr. Foss that he didn't get to see his kids on Father's Day. When Amy got on the stand, you have in the file, interesting, I guess, calendars. Because of the history that it had had prior to this, where there had been a lot of allegations and a lot of complaints, she kept calendars. And one of the specific provisions of Judge Duff's order was that the kids were to participate in their regularly scheduled activities and the parents were to work around those regularly scheduled activities. So when we put on our half of the case, Amy got on the stand, testified as to what the circumstances was, showed the calendars, and the calendars, which were admitted as exhibits in part of the file, documented that the visitation was taking place exactly as Judge Duff had ordered. On the Father's Day, Dad had been camping out in Missouri and the boy was in a baseball tournament. And I'm not going to bore you with the details, but on our side of the case, we specifically went through an explanation of what had taken place. And with the exhibits that were admitted and with the testimony that we presented, we clearly showed that there was no willful disobedience. There wasn't even a failure to abide by the terms of what Judge Duff had outlined. So on the first part, there is no evidence that would support a finding of contempt, period. There's just no evidence in the record. The second part goes back to what your prior case was all about, and that is what is the purpose of an indirect civil contempt remedy. And as we all know, the purpose of that is to impose a sanction that will encourage slash compel the parties to do what they're supposed to do. One of the sanctions that Judge Duff entered, I'm going to forget about there's no evidence for a second and just talk about the sanctions, was if she does it again, she's going to be sentenced to an indeterminate term in the Madison County Jail. Absolutely. Those are the kinds of sanctions that you impose in indirect civil contempt. Here's what you're supposed to do. If you do that, you're okay. If you don't do that, we're going to incarcerate you. The other ones that she did, though, are clearly an abuse of discretion. One was to triple Dad's summer visitation. And again, that was not conditioned on anything. It wasn't, Mom, if you don't allow the visitation, if you don't follow the order, then I'm going to triple Dad's summer visitation. That would have been an appropriate coercive sanction. She didn't do that. She just imposed it. Well, you know, I was reading. I didn't have the whole record, but I had parts of it that I looked at Wasn't there an interchange where she said, the judge, that she was going to impose the same visitation? But then it appeared that she thought she was. I mean, is it a mistake versus a contempt? Well, I thought it was a mistake because to impose the same. I don't think she intended to do that. But at the hearing, she was going to impose the same visitation. And then we went in afterwards and had some post-trial arguments that were in chambers and not on the record. And at that point, she said, no, I'm going to give them the whatever it was, the six weeks or three weeks. I haven't looked at that fact carefully. But I think clearly on the record, she says, I'm going to reinstate the existing visitation. Right. That's what I read. But after we talked to her, what we wound up with was triple the visitation. And then the other one was to order mom to pay all of the cost of counseling. And again, as with your last case, it was a punishment. This was not, if you fail to abide by my rule, then I will impose the cost of counseling. She didn't do that. She said, I'm going to order mom to pay 100% of the cost of counseling. So I think on both of those, not to waste the court's time, on both of those, clearly, they were not coercive. It's indirect civil contempt. It is to be coercive. If it's not coercive, it's a punishment. It's criminal contempt, which this wasn't. So there's no evidence to support the finding of contempt. And the sanctions that were imposed for the increased visitation and the counseling cost were not coercive and were an abuse of discretion as they were inappropriate sanctions for indirect civil contempt. Thank you. Thank you. Mr. Smith, am I pronouncing your name correctly? Don't say the G. Don't say the G. Okay. Well, say it for me then. Bentabolio. Okay. Thank you. And I see that you are not Mr. Smith. That is correct. The one that might be due for the court had I been Mr. Smith to pronounce the last name. Well, I would have liked to talk to Mr. Smith about his brief, which I find very, very lacking. And you might pass that on. I agree. And I agree. But we're not going to hold that against you or your client. Or hopefully against Mr. Foss. Or your client. If it may please the court, it's indicated my name is Jim Bentabolio. And I'm here on behalf of the respondent, Jeffrey Foss. The entirety of Judge Duff's order should be affirmed in its entirety for two reasons. First, there was no abuse of discretion. There was sufficient evidence for her to find that. The appellant violated her court order, and the violation was both willful and contemptuous. And second, the order of July 17, 2010, is not limited just to the motion for contempt. As indicated at the very beginning of the hearing, and as indicated in the order itself, there were a number of motions pending. There were issues of child support. There were also issues of visitation. So the order carried more than just the motion for contempt. As far as whether there was sufficient evidence to find Mrs. Foss guilty of indirect civil contempt, the court conducted an extensive hearing. It heard testimony from Mrs. Foss, from Mrs. Foss' current husband, and from my client, Jeffrey Foss. The court considered the exhibits presented by Mrs. Foss. It also considered the exhibits submitted by Mr. Foss. After weighing this evidence, listening to the testimony, observing the demeanor and the conduct of the parties, the court reached the conclusion that Mrs. Foss had, in fact, disobeyed the court's order. Now, it suggests that just disobeying the order is not enough. And that is the law, but under the correct context. Once it is shown that it has been disobeyed, then the potential condemner must present evidence, the burden shift, to show that the disobedience was not willful or that there was some excuse or justification for it. In here, there was evidence that did not allow visitations. On five occasions, Mr. Foss testified to that. He also testified about the Father's Day incident. And there was testimony about the interference by Mrs. Foss and her current husband on the visitation. That was sufficient to find willful and contemptuous violation. Mrs. Foss had an opportunity to present evidence to show that there was a reason for it or an excuse. The court didn't believe it. The court found that, in fact, she had disobeyed the order and had willfully disobeyed the order. And that's a discretion of the court. The court was there. The court listened to these people. The court observed these people. In fact, in the transcript comments to Mrs. Foss about her rolling her eyes and the smug look she's giving the court, it's fairly apparent that she was not particularly happy with the court, nor was the court happy with her. It's also apparent that the court wasn't particularly happy with Mr. Foss and that both of these parents were acting probably as bad as their children. But the fact remains that there was interference in the visitation. The excuse that, well, the kids don't like their father and don't want to go, that's not justification. The fact that there may be activities, extracurricular activities cannot be used as a means to avoid visitation. There was no attempt to communicate with Mr. Foss as to what extracurricular activities were present. And so the court had plenty of justification to find that there was contempt for the court's order. Was there a pleading on file regarding the visitation change sought by the father? Yes, on March 20th of 2009, shortly before the temporary, and it's important to note that this is a temporary order. Mrs. Foss had filed a motion to restrict visitations. On August 4th, 2009, Mr. Foss had filed a motion, I'm sorry, Mrs. Foss had filed a motion to modify child support. And on April 30th, 2009, Jeffrey Foss had filed a motion to compel counsel. So these motions were all present. On March 3rd, 2010, the court entered a case management order that said all pending motions would be heard on April 15th. Now that April 15th, 2010 hearing was continued at Mrs. Foss' request. And eventually, apparently there have been continuances over that 11-month period, finally the hearing was held on May 17th, 2010. So we're talking essentially 11 months, almost 11 months from the time the temporary order was entered until the hearing on all these motions. As I indicated, the hearing covered more than just the motion for contempt. The court introduced, starts the hearing by saying this matter comes upon the hearing regarding issues of visitation and child support. No place in the motion for contempt. Is there any discussion of child support? So the court was hearing more than just that motion. The court, dealing with issues of the visitation, dealing issues with child support, dealing issues with the motion to compel, has the power to issue equitable ruling, an equitable judgment. And that matters regarding child visitation, again, should be left up to the trial court. It has broad discretion. And unless there's a manifest injustice that's been done, it should not be overturned. The court's authorized to modify visitation's order, order supervision of visitation, make up visitation, order parties to participate in counseling, and other appropriate relief as deemed equitable. Now, regarding the visitation, the court heard the testimony. Mr. Boss testified that two additional weeks in the summer he thinks would be beneficial for the children because it would give them a chance to know them better and to work out the differences that appears to be between the children and Mr. Boss. And there was no objection to that testimony. The court did, in fact, reinstate the prior visitation and added two weeks during the summer. There was also the motion to modify child support. There was testimony first introduced by Ms. Boss and her attorney. That's where the hearing started, was at how much did Mr. Boss make and where did he work. That was not part of the motion for contempt, but that was the first thing that was brought up before the court. And so the court properly issued a change in the amount of child support. And finally, the court issued an order regarding counseling. The prior order had required counseling, had required the parties to pay for their own counseling, and split the cost for the children's counseling. Apparently the court found that the continued need for counseling was a result of conduct of Mrs. Boss and her husband. Was there a finding about that? That's why I said apparently, Your Honor. Because the prior order was modified to Mrs. Boss being responsible for the children's, cost of children's counseling, rather than being divided 50-50. So they had already been in counseling? There had been an order requiring counseling. But that hadn't taken place? That hadn't taken place would prompt that Mr. Boss would file a motion to compel counseling. And it was testimony as to why they would be in counseling. Mr. Boss testified that Mrs. Boss said, they're not going to counseling with you. Simple as that. So the court was dealing with a number of issues. There were four children present, the two youngsters and the two adults. But the fact remains the court had a full and fair opportunity to evaluate the testimony of these individuals. Found Mrs. Boss' testimony not to be credible apparently because a contempt order was issued. Was her testimony taken from the adult children? No, when I say the adult children, that's Mr. Boss and Mrs. Boss, Your Honor. Oh, okay. Sorry, I didn't mean to confuse the court. You get tired of hearing grownups acting like children. The court entered the contempt order requiring Mrs. Boss to comply with the visitation schedule. The court also entered as part of the order a resolution of the motion to restrict visitation, a resolution of the motion to modify child support, and a motion to compel counseling. That is why that order includes those items when they were never brought up in Mr. Boss' motion for sanctions. Thank you, Your Honor. Thank you. Mr. Steinberg, do you have a comment? Just a couple points. I had a chance to look at the order, and I can now answer your question. What the visitation schedule was is Dad would have an extra 14 days during the months of June, July, and August. And the way that had been applied for the six years before is he would get 14 days. And I think we did this a couple of times. I think we submitted a couple of proposed orders, which may or may not be in the record. But what language the judge added to it is 14 uninterrupted days each month. So instead of 14 days throughout the summer, 14 days each month. As far as the counseling and evaluations go, there was no counseling order. There were evaluations. Judge Duff, in one of her earlier interim orders, ordered each of the parents and the children to be independently evaluated. And those records were submitted under seal, and she reviewed all of those. Because they're submitted under seal, I'm not sure if they're part of your record. But there was not a counseling order. It was an evaluation. The difficulty we have with counsel's response is contempt is not a broad brush with which we paint. It's specific. It's narrow. And it's got to be applied. As the case law tells us, it has to be applied. If you read Judge Duff's order, she starts out, she's finding her in contempt. And in order to compel, of course, compliance, you know, so forth, which we mentioned before. But number one, if you read the record, there is no evidence that would support a finding of contempt. It's a very brief record. It's a very simple presentation by Mr. Foss. There's just simply nothing there. And on the sanctions, clearly beyond the threat of jail, they're not appropriate indirect civil contempt sanctions. I'm afraid that this was a judge that got upset with the people. And, you know, good judges make bad orders. Not to say that there's not reason to get aggravated with people. But even when you do, you've got to remember the limitations. And if you overstep those, that's what we call an abuse of discretion. And I think this one was clearly an abuse of discretion. Thank you. Thank you both for your brief arguments. And this court stands in recess until 11 a.m.